[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-13580

_____

In re: LORENZO ESTEVA,

Debtor.

_____

LORENZO ESTEVA,
a Florida resident,
DENISE OTERO VILARINO,
a Florida resident,

Plaintiffs-Appellees,

*versus*

UBS FINANCIAL SERVICES INC.,
UBS CREDIT CORP,

2                  Opinion of the Court                21-13580

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-23183-MGC

_____

Before WILLIAM PRYOR, Chief Judge, and ROSENBAUM and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

This case raises the question whether we have jurisdiction over an appeal taken from a bankruptcy court order granting summary judgment on some, but not all of the claims brought in an adversary proceeding prior to the entry of final judgment. Because the bankruptcy court order is not final, and despite the parties' effort to create jurisdiction by stipulating to the voluntary dismissal of the sole remaining claim during the pendency of this appeal, we hold that we do not.

Lorenzo Esteva and his wife, Denise Otero Vilarino ("Otero") (together, "Plaintiffs"), commenced this adversary proceeding in the United States Bankruptcy Court for the Southern District of Florida against UBS Financial Services Inc. and UBS Credit Corp. (together, "UBS"), to recover funds UBS had frozen in one of its accounts to satisfy debts owed by Esteva. After the

bankruptcy court granted partial summary judgment in favor of Esteva and his wife on all of the claims but one -- Esteva's unjust enrichment claim -- UBS appealed to the district court, which affirmed. Then, even though we only have appellate jurisdiction over final decisions of the bankruptcy court in the normal course of events, UBS appealed to this Court, urging us to apply a more "flexible" interpretation of finality in the bankruptcy arena.

Although the parties agree that we have jurisdiction, we are bound to dismiss this appeal because the same concepts of finality apply in appeals taken from adversary proceedings as in appeals taken from standard civil actions. The bankruptcy court left Esteva's unjust enrichment claim open and awaiting trial, so we cannot assert jurisdiction based on the finality of the bankruptcy court's order. Nor, on this record, can we find that any of three recognized exceptions to the final judgment rule -- the collateral order doctrine, the practical finality doctrine, or the marginal finality doctrine -- allows us to reach the merits of UBS's appeal.

In a last-ditch effort to breathe jurisdictional life into this appeal, the parties filed a stipulation for voluntary dismissal in the bankruptcy court on the eve of oral argument. While, under the doctrine of cumulative finality, the subsequent entry of final judgment may cure a premature notice of appeal, the parties' effort to finally resolve the underlying proceeding in this case falls flat. Federal Rule of Civil Procedure 41(a)(1)(A) unambiguously requires that a voluntary dismissal dismiss the entire action -- not just an individual claim. But the parties' stipulated dismissal only sought

to dismiss one of Plaintiffs' claims. The stipulation was therefore invalid upon filing, and failed to confer on us the power to decide this case.

## I.

### A.

UBS hired Esteva as a financial advisor in the International Division of its Miami office in November 2015. As part of the bank's recruitment strategy, UBS entered into a series of agreements (the "Promissory Notes") with Esteva, in which it agreed to loan him approximately $2 million, to be paid back over the first ten years of Esteva's employment using annual bonuses tied to his performance. The Promissory Notes stated that any outstanding principle would be immediately due and payable with interest if Esteva were ever fired.

Esteva deposited the loan proceeds into a UBS account (the "Account") that he opened with Otero, shortly after he started working for UBS. Esteva and Otero also transferred $500,000 of their savings into the Account.

When they opened the Account, Esteva and Otero signed a Client Relationship Agreement -- a form agreement signed by anyone who opens an account with UBS. The Agreement granted UBS a security interest in the Account's funds to secure payment of any debt incurred "under this or any other agreement between you and any UBS Entity, including but not limited to any loans or promissory notes."

Things came to a head in 2017, when UBS fired Esteva for allegedly sending falsified account statements to clients and improperly "journaling" funds between clients' accounts without permission. Following Esteva's termination, UBS restricted and froze the Account to secure repayment of the Promissory Notes. UBS asserted that the Client Relationship Agreement granted it an interest in the Account's funds to secure Esteva's debts under the Notes.

## B.

On May 31, 2018, Esteva voluntarily petitioned for Chapter 7 bankruptcy (later converted to Chapter 11). In his bankruptcy petition, Esteva listed the Account as "exempt" from property of the estate due to his interest in the property as a tenant by the entirety, *see* 11 U.S.C. § 522(b)(3)(B), and alleged that UBS held an unsecured claim against the estate worth $1,950,000. UBS contested this characterization of its claim as unsecured, and, in March 2019, filed a proof of secured claim for indebtedness in the amount of $2,034,662.28 under the Promissory Notes.

On March 4, 2019, Esteva and Otero commenced an adversary proceeding against UBS to confirm the exempt status of the Account and the unsecured nature of UBS's proof of claim. The adversary complaint set forth four separate counts seeking: (1) declaratory relief that the Account is exempt as a tenancy-by-the-entirety property; (2) declaratory relief that UBS does not hold a valid security interest in or any other encumbrance against the Account; (3) turnover of the funds in the Account to Esteva and Otero under

11 U.S.C. § 542; and (4) restitution on a theory of unjust enrichment, based on the fact that UBS kept Esteva's book of business without compensation following his termination. Count 4 further sought disallowance of UBS's proof of claim to the extent it failed to set off against Esteva's unjust enrichment claim. UBS answered and in turn brought four counterclaims of its own seeking: (1) a declaration of UBS's perfected security interest in the Account; (2) avoidance of Esteva's deposits of the Promissory Notes' proceeds into the Account as fraudulent transfers under the Florida Uniform Fraudulent Transfer Act, Fla. Stat. §§ 726.105, 726.106; (3) contractual setoff against the Account's funds under 11 U.S.C. § 553(a); and (4) common-law setoff against the Account's funds.

Plaintiffs moved for summary judgment on the first three counts of their adversary complaint and all four of UBS's counterclaims, and partial summary judgment on Count 4 of their complaint. (Because Count 4 sought disallowance of UBS's proof of claim, Plaintiffs asked the bankruptcy court to find that the proof of claim was unsecured.) Over UBS's opposition, the bankruptcy court granted the motion in its entirety. The bankruptcy court issued a "partial final judgment" fully resolving all claims in the action except, notably, Plaintiffs' Count 4, which, the judgment said, would be set for trial later by separate order. The judgment directed UBS to transfer the remaining funds in the Account to a joint securities account designated by Plaintiffs within ten days of receiving the account information from Plaintiffs' counsel. UBS did not seek, nor did the bankruptcy court grant certification for

immediate appeal under Federal Rule of Bankruptcy Procedure 7054. Nevertheless, without waiting for trial on Plaintiffs' remaining count, UBS appealed the partial final judgment to the district court. Following briefing by the parties, the district court affirmed the judgment and dismissed UBS's appeal with prejudice.

UBS then appealed to this Court. Since Plaintiffs' unjust enrichment claim was still pending in the bankruptcy court, we directed the parties to brief the basis for our jurisdiction. The parties agreed that we had jurisdiction because, they claimed, the partial final judgment could be considered "final" for purposes of appeal, at least in the bankruptcy arena. We carried the jurisdictional issue with the case, and scheduled oral argument for December 9, 2022.

The day before oral argument, the parties filed a joint motion to supplement the record on appeal with a stipulation they had filed in the bankruptcy court that day. This stipulation stated that the Plaintiffs and UBS,

> under Rule 7041 of the Federal Rules of Bankruptcy Procedure (making Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 41(a)(1)(A)(ii) applicable in adversary proceedings), stipulate to the dismissal of Count 4 of the Adversary Complaint with prejudice. This Stipulation for Dismissal shall have no effect on or application to Plaintiffs' remaining claims in Counts 1, 2, and 3 of the Adversary Complaint or the Partial Final Judgment entered in this adversary.

## II.

We review issues of subject-matter jurisdiction *de novo*. *S.F. Residence Club, Inc. v. 7027 Old Madison Pike, LLC*, 583 F.3d 750, 754 (11th Cir. 2009). Even when the parties agree that jurisdiction is proper, we are "obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). "Because we are a court of limited jurisdiction, adjudicating an appeal without jurisdiction would 'offend[] fundamental principles of separation of powers.'" *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1227 (11th Cir. 2020) (alteration in original) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

## A.

Our analysis begins (and, as it turns out, ends) with the issue of our jurisdiction.

First, the obvious: we have appellate jurisdiction over "all final decisions, judgments, orders, and decrees" by a district court in reviewing a bankruptcy court decision. 28 U.S.C. § 158(d)(1). "'Although a *district court*, at its discretion, may review interlocutory judgments and orders of a bankruptcy court, a *court of appeals* has jurisdiction over only final judgments and orders entered by a district court . . . sitting in review of a bankruptcy court.'" *Mich. State Univ. v. Asbestos Settlement Tr. (In re Celotex Corp.)*, 700 F.3d 1262, 1265 (11th Cir. 2012) (emphasis in original) (citations omitted). Accordingly, "[t]his Court is without jurisdiction to

review an appeal of a bankruptcy court order which is not final." *Providers Benefit Life Ins. Co. v. Tidewater Grp., Inc. (In re Tidewater Grp., Inc.)*, 734 F.2d 794, 796 (11th Cir. 1984). We normally evaluate whether an appeal was taken from a final order by looking to the notice of appeal at the time it was taken. *See, e.g.*, *Robinson v. Tanner*, 798 F.2d 1378, 1379-82 (11th Cir. 1986); *Gen. Television Arts, Inc. v. S. Ry. Co.*, 725 F.2d 1327, 1331 (11th Cir. 1984).

At the time UBS noticed its appeal in our Court, no final decision had yet been entered. To be final, we have held that an adversary proceeding decision must resolve all of the claims brought by all of the parties -- anything less, and "no appeal may be taken . . . absent Rule 54(b) certification." *Dzikowski v. Boomer's Sports & Rec. Ctr., Inc. (In re Boca Arena, Inc.)*, 184 F.3d 1285, 1287 (11th Cir. 1999); *see also* Fed. R. Civ. P. 54(b); Fed. R. Bankr. P. 7054 (making Federal Rule of Civil Procedure 54(b) applicable to adversary proceedings). But the partial final judgment from which UBS appealed fully resolved only three of the four claims in Plaintiffs' adversary complaint, expressly noting that the fourth -- the unjust enrichment claim -- would be set for trial at a later date. And neither party requested, nor did the bankruptcy court grant certification for immediate review of the partial final judgment under Rule 54(b).

Citing two recent Supreme Court cases, *Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015), and *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582 (2020), the parties try to avoid our unambiguous case law, arguing that a bankruptcy order may be

considered "final" so long as it resolves "discrete disputes" within the larger bankruptcy proceeding. Thus, the parties say, jurisdiction is proper because the bankruptcy court's judgment resolved the parties' dispute over the validity of UBS's lien against the Account.

This argument comes up short. Neither *Bullard* nor *Ritzen* concerned an appeal from an adversary proceeding. *Bullard* held that the bankruptcy court's denial of a debtor's proposed Chapter 13 repayment plan was not a final order because it did not terminate the process of submitting and entering a court-approved repayment plan. 575 U.S. at 501-03. And *Ritzen* held that the denial of a creditor's request for relief from the automatic stay was final because the adjudication of the stay motion was a discrete "proceeding" within the larger bankruptcy. 140 S. Ct. at 588-90. Neither case abrogated our holding in *In re Boca* that a bankruptcy court order in an adversary proceeding must resolve *all* claims against *all* parties to be considered final. 184 F.3d at 1287. Thus, we do not have jurisdiction based on the finality of the bankruptcy court's judgment. *See United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (noting that, under our "prior panel precedent rule," we must follow our past decisions unless the Supreme Court or this Court sitting *en banc* overrules those decisions in a case that is "clearly on point" (quotation marks and citation omitted)).

## B.

There are, however, some situations where we will consider appeals taken from otherwise non-appealable interlocutory orders

prior to the entry of final judgment.  To ensure that appellate jurisdiction remains "flexible enough to handle the practicalities of complex litigation," *Martin Bros. Toolmakers, Inc. v. Indus. Dev. Bd. (In re Martin Bros. Toolmakers, Inc.)*, 796 F.2d 1435, 1437 (11th Cir. 1986), we have recognized three judge-made exceptions to the final judgment rule: the collateral order doctrine, the practical finality doctrine, and the marginal finality doctrine, *Lockwood v. Snookies, Inc. (In re F.D.R. Hickory House, Inc.)*, 60 F.3d 724, 725-27 (11th Cir. 1995).  But none of those exceptions apply in this case.

We do not apply these exceptions lightly.  Important policy considerations undergird our general hesitance to hear appeals from interlocutory orders.  Appeals taken before the entry of final judgment are "inherently disruptive, time-consuming, and expensive"; they "increase[] the workload of the appellate courts" and might require us "to consider issues that may be rendered moot"; they "undermine[] the district court's ability to manage the action"; and they open the door to "abuse by litigants seeking to delay resolution of a case." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) (quotation marks and citation omitted).  This case is no exception: none of the judicial carve-outs to the final judgment rule provide us jurisdiction.

The first of these exceptions, the collateral order doctrine, "permit[s] review of an interlocutory order if it involves a separable claim that has been conclusively determined and is collateral to the merits, too important to be denied review, and too independent of the merits to defer review until a final decision has been rendered."

*Atl. Fed. Sav. & Loan Ass'n of Fort Lauderdale v. Blythe Eastman Paine Webber, Inc.*, 890 F.2d 371, 376 (11th Cir. 1989); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). This exception does not apply here because the bankruptcy court's partial final judgment was obviously not separate from, or "collateral to" the merits of the adversary proceeding. *Blythe*, 890 F.2d at 376.

Second, under the "'most extreme' exception to the final judgment rule, we will review immediately 'even an order of marginal finality . . . if the question presented is fundamental to further conduct of the case.'" *In re F.D.R. Hickory House*, 60 F.3d at 727 (citation omitted) (quoting *Blythe*, 890 F.2d at 376). But this exception is limited to cases that "concern[] an unsettled issue of national significance." *Acheron Cap., Ltd. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, 22 F.4th 979, 992 (11th Cir. 2022) (quotation marks and citation omitted). Plainly, this case does not present the sort of "unique facts" which would allow us to assert jurisdiction.

Third, and finally, under the practical finality doctrine, we may review an interlocutory order that "decides the right to the property in contest, and directs it to be [immediately] delivered up by the defendant to the complainant." *In re F.D.R. Hickory House*, 60 F.3d at 726 (quoting *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 204 (1848)). The order must "subject[] the losing party to irreparable harm if appellate review is delayed until conclusion of the case." *Acheron*, 22 F.4th at 992 (quotation marks and citation omitted).

Based on the record before us, we cannot find that UBS will suffer irreparable harm if appellate review is delayed until the

conclusion of the adversary proceeding. Because the "property in contest" is the money contained in the Account, any harm suffered by UBS could be remedied with an award of money damages. *See Brown v. Sec'y, U.S. Dep't of Health & Hum. Servs.*, 4 F.4th 1220, 1226 (11th Cir.), *vacated as moot*, 20 F.4th 1385 (11th Cir. 2021). Although in "extraordinary circumstances," concerns about collectability, a party's insolvency, or the likelihood that a party will never pay may give rise to a finding of irreparable harm, *id.* (quotation marks and citation omitted); *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1359 (11th Cir. 2019), we see precious little in this record that would allow us to find that Esteva is insolvent or that he would ultimately be unable to pay back the funds in the Account, were UBS to prevail on appeal. *See O'Halloran v. Harris Corp. (In re Teltronics, Inc.)*, 904 F.3d 1303, 1313-14 (11th Cir. 2018). And the burden of proof on this issue plainly rests with UBS. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). That Esteva filed a petition for voluntary bankruptcy, standing alone, does not establish his insolvency. *In re Marshall*, 300 B.R. 507, 510 (Bankr. C.D. Cal. 2003), *aff'd sub nom.*, *Marshall v. Marshall (in re Marshall)*, 721 F.3d 1032 (9th Cir. 2013); *Connell v. Coastal Cable T.V., Inc. (In re Coastal Cable T.V., Inc.)*, 709 F.2d 762, 764 (1st Cir. 1983) (Breyer, J.). If anything, the bankruptcy plan and disclosure statement that UBS itself referenced in support of its motion for a stay pending appeal show that Esteva is currently employed as the Chief Financial Officer for a pharmaceutical and medical device manufacturing company and earns a $175,000 annual salary.

In short, we cannot assert jurisdiction over the bankruptcy court's partial final judgment under any of these recognized exceptions to the final judgment rule.

## C.

That leaves us with one other possible avenue to reach the merits of UBS's appeal: the doctrine of cumulative finality. Sometimes referred to by our Court as the "*Jetco* exception" to finality, this doctrine permits us to hear appeals that were prematurely taken from an interlocutory order, if (but only if) the interlocutory order would have been appealable under Rule 54(b) and if final judgment was entered without filing a new notice of appeal. *See Robinson*, 798 F.2d at 1385; *see also Jetco Elec. Indus., Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973).

### 1.

To start, the parties have asked us to take notice of their stipulation for voluntary dismissal by filing a motion to supplement the record on appeal. Whether to supplement the appellate record is "a matter left to our discretion," and we primarily consider "whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues." *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000).

Because a subsequent final judgment can sometimes cure a premature notice of appeal, *see Robinson*, 798 F.2d at 1385, we grant the parties' motion to supplement the record in this case, so

that we may consider the effect of their voluntary dismissal on our jurisdiction. *See CSX*, 235 F.3d at 1330.

**2.**

Under the doctrine of cumulative finality, a "premature notice of appeal is valid if filed from an order dismissing a claim or party and followed by a subsequent final judgment without a new notice of appeal being filed." *Robinson*, 798 F.2d at 1385; *accord Govern v. Meese*, 811 F.2d 1405, 1408 (11th Cir. 1987) (subsequent voluntary dismissal of remaining defendant following dismissal of other defendants vested us with jurisdiction); *United States v. Olavarrieta*, 812 F.2d 640, 642 (11th Cir. 1987) (subsequent entry of summary judgment as to claims against remaining defendant cured premature notice of appeal); *Kramer v. Unitas*, 831 F.2d 994, 997 (11th Cir. 1987) (same); *Fehlhaber v. Fehlhaber*, 941 F.2d 1484, 1486 n.1 (11th Cir. 1991) (same); 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3950.5 (5th ed. 2022) (observing that a notice of appeal "filed after an order disposing of some claims or issues but before another order or orders disposing of the remaining claims or issues relates forward to effect an appeal after the disposition of all remaining claims or issues").

Our research has not identified a case in which we have applied this doctrine to an appeal from an order of a bankruptcy court, but we see no reason why it should not apply in appeals from adversary proceedings. After all, we have previously extended the cumulative finality doctrine to apply in other instances -- namely, to appeals from administrative agency decisions. *See Jimenez-*

*Morales v. U.S. Att'y Gen.*, 821 F.3d 1307, 1309 (11th Cir. 2016) (citing *Robinson*, 798 F.2d at 1385). Several of our sister Circuits have held that they have jurisdiction to review interlocutory orders of the bankruptcy court where a final judgment has resolved the underlying bankruptcy during the pendency of the appeal. *See, e.g.*, *Woolsey v. Citibank, N.A. (In re Woolsey)*, 696 F.3d 1266, 1269 (10th Cir. 2012) (Gorsuch, J.) ("[A] premature notice of appeal involving a bankruptcy matter, even one (like this one) with an interstitial stop in the district court, ripens and becomes effective once a final order approving a plan of reorganization is entered." (cleaned up)); *Rains v. Flinn (In re Rains)*, 428 F.3d 893, 900-01 (9th Cir. 2005); *Watson v. Boyajian (In re Watson)*, 403 F.3d 1, 4-6 (1st Cir. 2005); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1044 (7th Cir. 2000). Moreover, "adversary proceedings generally are viewed as 'standalone lawsuits,'" and we apply the requirements of Rule 54(b) and the final judgment rule to those cases the same "as if the dispute had arisen outside of bankruptcy." *In re Boca*, 184 F.3d at 1286.

We therefore assume for the purposes of this appeal that the doctrine of cumulative finality applies to appeals taken from adversary proceedings, and may permit us to hear a premature appeal under the appropriate procedural circumstances.

### 3.

The problem with the application of cumulative finality in this case is that one of the procedural requirements is absent -- there has been no entry of final judgment in the adversary proceeding, not by the bankruptcy court, and not by operation of the

stipulation for voluntary dismissal filed by the parties. *See Robinson*, 798 F.2d at 1385. Though the parties attempted to finally resolve the adversary proceeding by stipulating to a voluntary dismissal of the only remaining claim, their stipulation did not achieve its purported end because it was invalid upon filing.

We reach this conclusion for several reasons. First, we look to the text of Civil Rule 41(a)(1)(A), which governs voluntary dismissals without a court order:

> (A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss *an action* without a court order by filing:
>
>> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
>>
>> (ii) a stipulation of dismissal signed by all parties who have appeared.

Fed. R. Civ. P. 41(a)(1)(A) (second emphasis added).

A plain reading reveals that the Rule does not authorize the voluntary dismissal of individual claims; rather, the Rule requires that a plaintiff dismiss the entire action. *See Pavelic & LeFlore v. Marvel Ent. Grp.*, 493 U.S. 120, 123 (1989) ("We give the Federal Rules of Civil Procedure their plain meaning."), *superseded in part on other grounds by rule*, Fed. R. Civ. P. 11 (amended 1993). Rule 41(a)(1)(A) speaks of "an action," not "claims," and the terms are

generally understood to carry different meanings. "Action" de-notes "a lawsuit," *Action*, *Oxford English Dictionary* (online ed.), "a civil . . . proceeding," *Action*, *Black's Law Dictionary* (11th ed. 2019), or "the entire controversy," *Harvey Aluminum, Inc. v. Am. Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953), whereas "claim" is used to refer to a particular "demand for money, property, or a le-gal remedy," *Claim*, *Black's Law Dictionary*, *supra*. An "action" generally is made up of multiple such demands; thus, we have ex-plained, Rule 41(a)'s reference to the voluntary dismissal of "an ac-tion" refers to "the whole case" instead of particular claims. *Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018) (quo-tation marks omitted) (quoting *Berthold Types Ltd. v. Adobe Sys., Inc.*, 242 F.3d 772, 777 (7th Cir. 2001)); *see also* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.").

Moreover, reading Rule 41(a)(1)(A) in concert with Rule 41's other provisions,[1] as we must, makes it abundantly clear that when

---

[1] Rule 41, in its entirety, provides:

(a) VOLUNTARY DISMISSAL.

(1) *By the Plaintiff.*

(A) *Without a Court Order.* Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:

(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judg-ment; or

(ii) a stipulation of dismissal signed by all parties who have appeared.

(B) *Effect*. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

(2) *By Court Order; Effect*. Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.

(b) INVOLUNTARY DISMISSAL; EFFECT. If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule -- except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19 -- operates as an adjudication on the merits.

(c) DISMISSING A COUNTERCLAIM, CROSSCLAIM, OR THIRD-PARTY CLAIM. This rule applies to a dismissal of any counterclaim, crossclaim, or third-party claim. A claimant's voluntary dismissal under Rule 41(a)(1)(A)(i) must be made:

(1) before a responsive pleading is served; or

(2) if there is no responsive pleading, before evidence is introduced at a hearing or trial.

(d) COSTS OF A PREVIOUSLY DISMISSED ACTION. If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:

20                    Opinion of the Court                    21-13580

the Rule's drafters wanted to distinguish between the dismissal of an "action" and a "claim," they knew how. *See Pavelic*, 493 U.S. at 123. Rule 41(b), which governs involuntary dismissals, expressly permits a defendant to "move to dismiss *the action or any claim* against it" if the plaintiff fails to prosecute or comply with the Rules or a court order. Fed. R. Civ. P. 41(b) (emphasis added). And the inclusion of "actions" and "claims" is also found in Rule 41(d), which, in turn, allows a defendant to recover costs if "a plaintiff who previously dismissed an action in any court files *an action based on or including the same claim* against the same defendant." Fed R. Civ. P. 41(d) (emphasis added). Had the Rule's drafters intended to allow for the voluntary dismissal of an "action" or a "claim" under Rule 41(a)(1)(A), they would have said so; instead, they only chose to allow for the dismissal of "an action." *See Smith, Kline & French Lab'ys v. A.H. Robins Co.*, 61 F.R.D. 24, 28 (E.D. Pa. 1973) ("The language of Rule 41(b) is broader and more comprehensive than the parallel language in Rule 41(a) . . . . [I]t is reasonable to assume that the drafters of Rule 41 would have included similar language in Rule 41(a), had they intended to have that rule cover dismissal by the plaintiff of less than all the claims against any defendant."); *Becker v. Fitzgerald*, No. 94 C 7646, 1995 WL 215143, at *3 (N.D. Ill. Apr. 10, 1995); 8 *Moore's Federal Practice – Civil* § 41.21 (2023) ("Rule 41(a) may not be employed to dismiss fewer

---

(1) may order the plaintiff to pay all or part of the costs of that previous action; and

(2) may stay the proceedings until the plaintiff has complied.

than all of the claims against any particular defendant. . . . This interpretation is usually justified by resort to textual interpretation: while the dismissal provisions of Rule 41(a) speak only of an 'action,' Rule 41(b) specifically distinguishes between 'an action or any claim' and permits the involuntary dismissal of either one."); cf. also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 545 (1991) (examining provisions in Rule 11 which distinguish between represented and unrepresented parties to conclude that "[h]ad the Advisory Committee intended to limit the application of [Rule 11's] certification standard to parties proceeding pro se, it would surely have said so").

Finally, our case law has unambiguously concluded that Rule 41(a) does not allow a plaintiff to voluntarily dismiss fewer than all of the claims brought in an action. See Perry, 891 F.3d at 958. In Perry, the district court disposed of seven of the plaintiff's eight claims by involuntary dismissal or summary judgment, leaving just one claim for trial. Id. at 955-57. To facilitate immediate appellate review, the parties stipulated to the voluntary dismissal of the plaintiff's sole remaining claim under Rule 41(a)(1)(A)(ii). Id. at 957.

A panel of this Court held that the parties' stipulation was "invalid" because it failed to comply with the text of Rule 41(a). Id. at 958. We said that Rule 41(a) "permits voluntary dismissals only of entire 'actions,' not claims." Id. at 956. And because the parties' stipulation only "purported to dismiss 'Count III of the Fourth Amended Complaint,'" we determined that the stipulation filed by

the parties had not operated to terminate the action or divest the district court of jurisdiction to hear subsequently filed motions. *Id.* at 958.

*Perry* presents almost identical procedural circumstances to those presented in this case. Like the district court there, the bankruptcy court here resolved all but one of the pending claims. And like the parties there, the parties here stipulated to dismiss the sole remaining claim following the entry of the partial final judgment to facilitate immediate appellate review -- for good measure, they even specified that "[t]his Stipulation for Dismissal shall have no effect on or application to Plaintiffs' remaining claims in Counts 1, 2, and 3 of the Adversary Complaint or the Partial Final Judgment entered in this adversary." The only difference between *Perry* and this case is that UBS's appeal arose from an adversary proceeding in a bankruptcy court, rather than from a standard civil action in a district court. But this is a distinction without a difference because, subject to exceptions that are not relevant here, Rule 41(a) applies equally to adversary proceedings by virtue of Federal Rule of Bankruptcy Procedure 7041,[2] and for all relevant purposes, our case law

---

[2] The Rule provides: "Rule 41 F.R.Civ.P. applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiff's instance without notice to the trustee, the United States trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper." Fed. R. Bankr. R. 7041. The exception for complaints objecting to a debtor's discharge is not relevant here because the adversary proceeding does not contain a claim objecting to the discharge of any debt by Esteva under 11 U.S.C. § 727.

has long considered adversary proceedings to be the functional equivalent of standard civil lawsuits. *See In re Boca*, 184 F.3d at 1286.

*Perry* does not stand alone. Our cases have consistently observed that Rule 41(a) "does not permit plaintiffs to pick and choose, dismissing only particular claims within an action." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004); *accord Campbell v. Altec Indus., Inc.*, 605 F.3d 839, 841 n.1 (11th Cir. 2010) (citing *Klay*, 376 F.3d at 1106) (same); *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1307 (11th Cir. 2016) ("Rule 41 speaks of voluntary dismissal of an action, not a claim. . . . A district court cannot dismiss some claims while leaving others pending." (quotation marks and citation omitted)); *Gov't Emps. Ins. Co. v. Glassco, Inc.*, -- F.4th --, 2023 WL 1775724, at *3 (11th Cir. Feb. 6, 2023) ("[R]ule 41(a)(1) permits voluntary dismissals only of entire actions, not claims." (quotation marks and citation omitted)). We have recognized an exception to this rule, allowing plaintiffs to voluntarily dismiss less than the entire action so long as they dismiss a defendant in its entirety (i.e., they dismiss all of the claims brought against that defendant). *See, e.g.*, *Plains Growers, Inc. ex rel. Florists' Mut. Ins. Co. v. Ickes-Braun Glasshouses, Inc.*, 474 F.2d 250, 255 (5th Cir. 1973); *Klay*, 376 F.3d at 1106 (acknowledging that Rule 41(a) "allows a plaintiff to dismiss all of his claims against a particular defendant"); *Corley*, 965 F.3d at 1231. But our cases make clear that a voluntary dismissal purporting to dismiss a single claim is invalid,

even if all other claims in the action have already been resolved. *See Perry*, 891 F.3d at 958.

Further, by our count, all of our sister Circuits that have squarely addressed this issue have reached the same conclusion. *See Berthold*, 242 F.3d at 776-77; *Gobbo Farms & Orchards v. Poole Chem. Co.*, 81 F.3d 122, 123 (10th Cir. 1996); *Ethridge v. Harbor House Restaurant*, 861 F.2d 1389, 1392 (9th Cir. 1988); *Exxon Corp. v. Md. Cas. Co.*, 599 F.2d 659, 662 (5th Cir. 1979); *Gronholz v. Sears, Roebuck & Co.*, 836 F.2d 515, 518 (Fed. Cir. 1987); *Mgmt. Invs. v. United Mine Workers*, 610 F.2d 384, 394-95 & n.22 (6th Cir. 1979); *see also Harvey Aluminum*, 203 F.2d at 108 (holding that Rule 41(a) does not permit voluntary dismissal of anything less than the entire action, even an entire defendant).

The long and short of it is that the parties' stipulation for voluntary dismissal was invalid upon filing. It did not resolve Esteva's unjust enrichment claim or terminate the adversary proceeding, and thus it did not denude the bankruptcy court of jurisdiction over the proceeding; it did not "leave[] nothing for the [bankruptcy] court to do but execute the judgment," *CSX*, 235 F.3d at 1327 (quotation marks and citation omitted); and it did not cure UBS's premature notice of appeal under the doctrine of cumulative finality, *see Robinson*, 798 F.2d at 1385. The bankruptcy court still must address or otherwise dispose of the unjust enrichment claim in some way. *See Perry*, 891 F.3d at 958.

As a court of limited jurisdiction, we are bound by law, by the Federal Rules of Civil Procedure, and by our case precedent to

dismiss this appeal. But that does not mean that our decision will deprive the parties of the opportunity to have their claims heard before this Court. Certification under Rule 54(b) provides a viable path to achieving the requisite level of finality. Nothing prevented the parties from seeking Rule 54(b) certification before UBS filed its notice of appeal, *see id.* ("Another option would have been to invoke Rule 54(b) *before* entering into the Stipulation."); nothing prevented the bankruptcy court from certifying the partial final judgment for immediate review on its own, *see* Fed. R. Bankr. P. 7054; and nothing prevents the parties from seeking Rule 54(b) certification following our dismissal.

Still another procedural alternative is to move to amend the adversary complaint under Civil Rule 15(a) to eliminate the unjust enrichment claim. *See* Fed. R. Bankr. P. 7015 ("Rule 15 F.R.Civ.P. applies in adversary proceedings."). As we observed in *Perry*, "[t]here are multiple ways to dismiss a single claim without dismissing an entire action. The easiest and most obvious is to seek and obtain leave to amend the complaint to eliminate the remaining claim, pursuant to Rule 15." 891 F.3d at 958. Again, nothing prevented the parties from pursuing this alternative before UBS filed its appeal in our Court, and nothing prevents them from doing so in the wake of our dismissal.

The result we reach today is not some technical application of a silly or obscure rule. "Congress has the constitutional authority to define the jurisdiction of the lower federal courts, and, once the lines are drawn, limits upon federal jurisdiction . . . must be

neither disregarded nor evaded." *Keene Corp. v. United States*, 508 U.S. 200, 207 (1993) (quotation marks and citations omitted). And Congress has determined that our jurisdiction is limited to "final decisions, judgments, orders, and decrees" of the bankruptcy courts. 28 U.S.C. § 158(d); *In re Tidewater*, 734 F.2d at 796. Because the parties' stipulation for voluntary dismissal was invalid, no final judgment has been rendered in this case.

**DISMISSED.**