**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-14253

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

APPROXIMATELY $3,275.20 SEIZED FROM BANK OF
AMERICA ACCOUNT NUMBER XXXXXXXXXXXX, et al.,

*Defendants,*

SABRINA SANTILLO TOMASICCHIO, et al.,

*Claimants,*

ROSA VEGA,

*Claimant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cv-20614-RNS

_____

Before BRANCH, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

After the government learned that several bank accounts and properties in the United States had ties to a foreign bribery scheme, it filed a complaint for civil forfeiture *in rem* under 18 U.S.C. § 981 to seize those assets. Rosa Vega filed a verified claim to assert her ownership interest in two of the real properties. But she did not file—as the federal rules require—an answer to the government's forfeiture complaint. The government filed a motion to strike her claim on that basis. Because the district court did not abuse its discretion in granting that motion, we affirm.

## I.

In February 2021, the government filed a complaint for civil forfeiture *in rem* against fourteen bank accounts and seven real properties involved in a foreign bribery scheme. The government alleged that certain Venezuelan officials accepted bribes in exchange for procurement contracts with state-owned oil companies, contracts which often included "significant price inflation." According to the complaint, the bribe payments were then laundered through several bank accounts and used to purchase a number of real properties. The government thus sought to seize those assets—with a total value of about $45 million—as proceeds of an illegal bribery scheme and property involved in money laundering. *See* 18 U.S.C. § 981(a)(1)(A), (a)(1)(C).

Twenty-three individuals and companies filed verified claims to contest the government's forfeiture. Rosa Vega was one of them. She asserted in her April 8, 2021, verified claim that she owned properties identified in the forfeiture order—specifically, two condominium units in Miami, Florida. But unlike many of the other claimants, she did not file an answer to the government's forfeiture complaint. In fact, she did not file anything else in the district court for the next three years.

That changed on May 6, 2024. Vega's counsel filed a motion—just four days before discovery was set to close—asking the court to extend the deadline. The reason? Vega's counsel cited "unforeseen personal and professional circumstances." The district court denied that motion, finding that Vega's counsel fell "far short of establishing the good cause" required to extend the deadline. The court also referenced its scheduling order from many months before, in which the court had warned that it was unlikely to grant deadline extensions because the case had "already been pending for a lengthy period."

On May 17, 2024, the government moved to strike Vega's verified claim, on the grounds that she never filed an answer within the time set by the federal rules. Vega replied by filing a response in opposition and a motion for leave to file an out-of-time answer.

The district court granted the government's motion to strike on August 28, 2024, and denied Vega's motion to file an untimely answer. The court "insist[ed] on strict compliance" with the federal rules—which required Vega to file a timely answer—

because she "sat on her rights for over three years without any good faith effort to participate in this litigation."[1]

On December 19, 2024, the district court denied Vega's motion to reconsider and entered a separate order granting a final judgment of forfeiture to the government on the two condominiums. She filed a notice of appeal on December 30, 2024, naming the district court's (1) August 28, 2024, order striking her claim and (2) December 19, 2024, order denying her motion for reconsideration.

At the time Vega filed her notice of appeal, the court had resolved outstanding claims involving four other real properties and ten bank accounts. But that left the government's forfeiture efforts unresolved for one real property and a handful of bank accounts. Then, on February 25, 2025, the district court entered final judgment for the remaining assets and closed the case.

## II.

We begin by asking whether we have jurisdiction to consider Vega's appeal. Section 1291 grants jurisdiction over "appeals from all final decisions of the district courts." 28 U.S.C. § 1291. A "final decision" typically "ends the litigation on the merits and leaves nothing for the court to do but execute its

---

[1] The government had also filed a motion for summary judgment on the two condominiums, arguing that Vega lacked statutory standing to contest the forfeiture. The district court denied this motion as moot after it struck her claim.

judgment." *Acheron Cap., Ltd. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, 22 F.4th 979, 986 (11th Cir. 2022) (quotation omitted). Ordinarily, "an order adjudicating fewer than all the claims in a suit" does not fit that bill. *Lloyd Noland Found., Inc. v. Tenet Health Care Corp.*, 483 F.3d 773, 777 (11th Cir. 2007); *see* Fed. R. Civ. P. 54(b). That means we cannot typically exercise jurisdiction over an appeal from a "judgment on fewer than all claims or parties" unless the district court certifies it as "final" under Federal Rule of Civil Procedure 54(b). *Lloyd Noland Found.*, 483 F.3d at 777.

Vega appealed from an order that disposed of her verified claim in the forfeiture action. But that order "adjudicate[d] fewer than all the claims" in the suit, and several claims were still pending in the district court at the time she appealed. Fed. R. Civ. P. 54(b). The district court did not certify its order disposing of Vega's claim as "final" under Rule 54 for purposes of an immediate appeal. *Lloyd Noland Found.*, 483 F.3d at 777. Vega thus filed her notice of appeal prematurely—that is, before the district court resolved all claims or parties in the action.

Yet the district court later resolved the remaining claims in the action and closed the case. In some circumstances, the entry of a "subsequent final judgment" may "cure" a prematurely filed appeal. *In re Esteva*, 60 F.4th 664, 674 (11th Cir. 2023). Federal Rule of Appellate Procedure 4(a)(2) permits "a notice of appeal filed from certain nonfinal decisions to serve as an effective notice from a subsequently entered final judgment." *FirsTier Mortg. Co. v. Invs. Mortg. Ins. Co.*, 498 U.S. 269, 274 (1991). But only those nonfinal

decisions that "would be appealable if immediately followed by the entry of judgment"—such as an order dismissing fewer than all claims or parties from the action—qualify as a "decision" for purposes of Rule 4(a)(2). *Id.* at 276 (emphasis omitted); *see In re Esteva*, 60 F.4th at 674 (citing 9A Wright & Miller, *Federal Practice and Procedure* § 3950.5 (5th ed. 2022)).

In this case, Vega's prematurely filed appeal is saved by the district court's subsequent final judgment. As the district court entered final judgment on the last remaining asset and closed the case on February 25, 2025—we may treat Vega's notice of appeal as if it was filed on that day. *Cf. United States v. $525,695.24, Seized from JPMorgan Chase Bank Inv. Acct. #xxxxxxxx*, 869 F.3d 429, 435–36 (6th Cir. 2017); *In re Bryson*, 406 F.3d 284, 287–89 (4th Cir. 2005). We thus have jurisdiction to entertain her appeal.

## III.

The only remaining issue on appeal is whether the district court abused its discretion in granting the government's motion to strike Vega's verified compliant. It did not.

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions and 18 U.S.C. § 983 establish the statutory standing requirements for contesting forfeiture. *United States v. $38,000.00 in U.S. Currency*, 816 F.2d 1538, 1545 (11th Cir. 1987). Rule G requires claimants to file a verified claim asserting their interest in the seized property. Supp. R. G(5)(a). The claimant then has twenty-one days to file either an answer to the

24-14253               Opinion of the Court                        7

government's forfeiture complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  Supp. R. G(5)(b).

When claimants don't follow these requirements, Rule G allows the government to file a motion to strike the verified claim. Supp. R. G(8)(c).  That's because even a "single deviation" may deprive a claimant of "statutory standing" to contest the forfeiture. *United States v. $31,000.00 in U.S. Currency*, 872 F.3d 342, 349 (6th Cir. 2017).  To be sure, a district court has discretion to extend filing periods for claims and answers, but it may also "require claimants" to "comply strictly with the rule's requirements."  *United States v. $125,938.62*, 370 F.3d 1325, 1328–29 (11th Cir. 2004) (quotation omitted).  Courts "consistently" require "claimants to follow the language of the Supplemental Rules to the letter."  *$38,000.00 in U.S. Currency*, 816 F.2d at 1547.

In this case, Vega did not file an answer to the government's complaint within the time required by the Supplemental Rules. Far from it: she waited until after the government moved to strike her claim—over *three years* later—before attempting to file an untimely proposed answer.  A strict application of the federal rules leads to the conclusion that Vega lacked statutory standing to pursue her claim.  That's reason enough for us to conclude that the district court did not abuse its discretion in striking her claim.  *See $31,000.00 in U.S. Currency*, 872 F.3d at 349.

Vega counters by arguing that the district court should have relaxed the strict-compliance standard.  She claims that her "active participation" in the litigation rendered her failure to file an answer

"a mere technicality" that should have been overlooked.  But the record belies that assertion.  Beyond participating in settlement negotiations with the government, Vega's efforts amounted to filing a verified claim, filing a last-minute motion to extend the discovery deadline, and sending a discovery request to the government the day discovery closed.  The district court said it best: "whether by design, apathy, or something else, Vega has not vigorously—or even actively—pursued her claims or sought to comply with the Court's deadlines."

Plus, Vega is incorrect that the answer is "a mere technicality."  Though the government had notice of Vega's interest in the seized property from her verified claim, the answer serves a distinct purpose: it forces the claimant to state defenses and admit or deny the allegations in the government's complaint.  Without it, the government cannot know what issues to prepare for trial.  In Vega's proffered answer—again, filed three years into litigation, and after discovery had already closed—she disputed almost every allegation in the complaint and raised nine affirmative defenses.  Surely, then, Vega's answer gave the government information that it could not have known from her claim alone.  Because Vega's answer came three years too late, the district court did not abuse its discretion in granting the government's motion to strike.

One last thing.  It's true that the government violated one of the district court's local rules when it failed to confer with Vega before filing its motion to strike.  Still, we give "great deference" to

24-14253              Opinion of the Court                    9

the district court's interpretation and application of its own local rules. *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (quotation omitted). The district court here reasonably concluded that denying the government's motion to strike based on a local rule violation would "only exacerbate the situation," because it was already rejecting Vega's efforts to file her out-of-time answer. Since nothing would be gained by denying the motion to strike, the court did not abuse its discretion in excusing the government's noncompliance.

⋆    ⋆    ⋆

We **AFFIRM** the district court's judgment.