[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-13074

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

PINKNEY CLOWERS, III,
a.k.a. Boo Boo,
a.k.a. DOG,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 5:92-cr-00082-TES-CHW-2

———————————

Before JILL PRYOR, GRANT, and ANDERSON, Circuit Judges.

GRANT, Circuit Judge:

The First Step Act offers a meaningful benefit: the retroactive application of specified provisions of the Fair Sentencing Act. But that benefit is limited. The Act permits a district court to reduce an eligible defendant's sentence "as if" the Fair Sentencing Act "were in effect at the time the covered offense was committed." First Step Act of 2018, Pub. L. No. 115-391, § 404(b), 132 Stat. 5194, 5222. It "does not permit a reduction when the Fair Sentencing Act could not have benefitted the movant." *United States v. Jones*, 962 F.3d 1290, 1303 (11th Cir. 2020). If the defendant is already serving the statutory minimum sentence that would have applied under the Fair Sentencing Act, the First Step Act offers no relief. *Id.*

But how does the First Step Act court decide what that minimum sentence would have been? The district court recalculates the statutory sentencing range as if the Fair Sentencing Act's changes—and only those changes—were in effect at the time the offense was committed. *See* First Step Act § 404(b); *cf. Concepcion v. United States*, 142 S. Ct. 2389, 2402 n.6 (2022) (under the First Step Act, a district court cannot "recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act"). And as we have said, a district court must incorporate a previous drug-

quantity finding "that could have been used to determine the movant's statutory penalty at the time of sentencing" into its analysis when determining whether the Fair Sentencing Act would have benefitted the defendant. *Jones*, 962 F.3d at 1303. That includes findings made for purposes of calculating the defendant's Sentencing Guidelines range.

Pinkney Clowers appeals the denial of his First Step Act motion to reduce his sentence. The district court considering Clowers's motion correctly concluded that it was bound by the sentencing court's drug-quantity finding when determining what his statutory penalties would have been under the Fair Sentencing Act. And because that drug quantity would still trigger a mandatory life sentence after the Fair Sentencing Act, the district court also correctly concluded that it could not reduce Clowers's sentence under the First Step Act.

## I.

The "continuing criminal enterprise" statute targets organized drug trafficking by setting stiff sentences for the managers of criminal drug businesses. 21 U.S.C. § 848. The statute mandates a sentence of life imprisonment if the defendant was one of the "principal administrators, organizers, or leaders" of the enterprise and the offense involved "at least 300 times the quantity" of a controlled substance listed in § 841(b)(1)(B) of the federal drug-trafficking statute. *Id.* § 848(b). So, for example, the leader of a gang engaged in drug trafficking might be sentenced to life in prison if he were convicted of conspiring to distribute a large

enough quantity of heroin or cocaine as part of the gang's drug business. *See id.*; *see also id.* §§ 841(b)(1)(B)(i) (heroin), 841(b)(1)(B)(ii)(II) (cocaine), 841(b)(1)(B)(iii) ("cocaine base" or crack cocaine).

Clowers was convicted of just such an offense. In 1993, a jury found him guilty of engaging in a continuing criminal enterprise by committing a series of felony drug crimes involving the distribution of crack cocaine—a substance listed in § 841(b)(1)(B)—along with other offenses. Evidence introduced at his trial showed that Clowers and a codefendant founded and led an organization that sold crack cocaine in Macon, Georgia in the early 1990s. *United States v. Boyd*, 131 F.3d 951, 952 (11th Cir. 1997). Clowers faced a possible mandatory life sentence based in part on the quantity of crack cocaine involved.

The jury made no drug-quantity finding. Clowers was tried, convicted, and sentenced before the Supreme Court clarified that any fact (other than a prior conviction) that increases the statutory minimum or maximum sentence must be treated as an element of the offense to be found by the jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 107–08 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Following the usual practice at the time, the sentencing court made its own finding that Clowers's offense involved more than 15 kilograms of crack cocaine, which corresponded to the highest offense level under the Sentencing Guidelines. *See* U.S. Sentencing Guidelines §§ 2D1.1(c)(1), 2D1.5(a)(1) (Nov. 1993) (yielding an offense level in

excess of 43). This was ten times the amount necessary to satisfy the then-existing drug-quantity element of the continuing criminal enterprise offense. *See* 21 U.S.C. §§ 841(b)(1)(B)(iii), 848(b)(2)(A) (1988). Because Clowers was also found to be one of the "principal administrators, organizers, or leaders" of the crack-cocaine business, the statute mandated a life sentence. *Id.* § 848(b). The court sentenced Clowers to life in prison.

Twenty-five years later—after having spent more of his life in prison than out of it, and by all accounts behaving as a model prisoner—Clowers filed a motion to reduce his sentence under the First Step Act. The district court concluded that although it would reduce the sentence if it were authorized to do so based on Clowers's exemplary behavior during nearly three decades in prison, the text of the First Step Act did not give that option. Clowers now appeals.

## II.

In 2010, Congress enacted the Fair Sentencing Act to reduce the dramatic disparity in jail time for defendants whose crimes involved powder cocaine and those whose crimes involved crack cocaine. *See Dorsey v. United States*, 567 U.S. 260, 268–69 (2012). The Act achieved this purpose by, among other things, amending federal drug-trafficking statutes to increase the quantity of crack cocaine required to trigger mandatory minimum sentences. *Id.* at 269; Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. But the Act applied only prospectively; it did not

provide relief for defendants who had been sentenced before its effective date. *See Jones*, 962 F.3d at 1297.

Apparently dissatisfied that earlier offenders were still subject to the same harsh penalties, Congress passed the First Step Act, which made the crack cocaine sentencing changes retroactive. *Id.* Under § 404 of the new Act, a district court that sentenced a defendant for a "covered offense" may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed." First Step Act § 404(b).

The statute defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act." *Id.* § 404(a). Those sections contain the quantity adjustments for minimum sentences put in place to reduce the disparity between crack and powder cocaine sentences. Fair Sentencing Act of 2010 §§ 2–3; *Dorsey*, 567 U.S. at 269. So if a defendant was sentenced before the effective date of the Fair Sentencing Act for an offense that includes as an element the quantity of crack cocaine described in § 841(b)(1)(B)(iii), his offense is a covered offense under the First Step Act. *Jones*, 962 F.3d at 1298.

But that does not mean that the district court can reduce the sentence of every defendant with a covered offense. As we explained in *Jones*, the fact that any sentence reduction must be made "as if" the Fair Sentencing Act were in effect at the time of the defendant's offense means that no relief is available under the

First Step Act if the defendant "received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act." *Id.* at 1303. And in determining what the defendant's statutory penalty would have been under the Fair Sentencing Act, "the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing." *Id.*[1]

### III.

The parties agree, as do we, that Clowers has a covered offense under the First Step Act. The jury found him guilty of engaging in a continuing criminal enterprise. The penalties for that crime incorporated the drug quantity in 21 U.S.C. § 841(b)(1)(B)(iii). *See* 21 U.S.C. § 848(b)(2)(A) (1988). The Fair Sentencing Act increased the quantity of crack cocaine required under that subsection from 5 grams to 28 grams. Fair Sentencing Act § 2(a)(2). Clowers was thus sentenced for a "covered offense" because § 2 of the Fair Sentencing Act modified the statutory penalties for his offense. *Jones*, 962 F.3d at 1298.

But as we have said, having a covered offense is not always enough. The Fair Sentencing Act raised the quantity of crack cocaine required to trigger statutory minimum sentences; it did not remove the mandatory minimum penalties altogether. The First Step Act does not authorize a sentence reduction below the

---

[1] We recently reaffirmed our reasoning in *Jones* with respect to these limitations. *See United States v. Jackson*, 58 F.4th 1331, 1333 (11th Cir. 2023).

statutory minimum sentence that would have applied if the Fair Sentencing Act had been in effect when the movant committed his offense. Nor does it change the legal significance that the sentencing court's drug-quantity findings held at the time.

Clowers's case illustrates the point. Because he would receive the same mandatory life sentence even under the Fair Sentencing Act, the district court could not reduce his sentence under the First Step Act. To explain in more detail, if the Fair Sentencing Act had been in effect at the time of Clowers's offense, the quantity of crack cocaine listed in § 841(b)(1)(B) would have been 28 grams instead of 5 grams, and the quantity of crack cocaine required to trigger a mandatory life sentence for a continuing criminal enterprise offense would have been 8.4 kilograms instead of 1.5 kilograms. *See* 21 U.S.C. § 848(b)(2)(A) (mandating a life sentence for offenses involving "at least 300 times the quantity of a substance described in subsection 841(b)(1)(B)"). Either way, the sentencing court's finding that Clowers's offense involved more than 15 kilograms of crack cocaine would easily satisfy the quantity element of Clowers's continuing criminal enterprise offense; the statute would still have required a life sentence. Because the sentencing judge would not have had any latitude to impose a lower sentence if the Fair Sentencing Act had existed in 1994, the

First Step Act does not authorize the district court to do so now.[2] *See Jones*, 962 F.3d at 1303.

Clowers tries to get around our holding in *Jones* by creatively interpreting the language we used in that opinion. He argues that when we referred to a drug-quantity finding that "could have been used" at sentencing to determine the applicable statutory penalties, we really meant that district courts are bound only by a drug-quantity finding that *was* used for that purpose. *Id.* He contends that because the parties and the sentencing court discussed drug quantity at his sentencing only in relation to his Sentencing Guidelines range, the court's finding that his offense involved more than 15 kilograms of crack cocaine was not used to determine his statutory penalties. Consequently, he argues, the district court was not bound by that finding when determining his

---

[2] Clowers fights the basic premise of this analysis. He argues that the district court should not have used the sentencing court's drug-quantity finding to determine his statutory penalty under the Fair Sentencing Act because we now recognize that the Sixth Amendment requires such findings to be made by a jury. As Clowers acknowledges, we have rejected this argument before, and we reiterate that "the Constitution does not prohibit district courts, in deciding motions for reduced sentences under the First Step Act, from relying on earlier judge-found facts that triggered statutory penalties that the Fair Sentencing Act later modified." *Jones*, 962 F.3d at 1303. We are, of course, bound by our prior panel decision in *Jones* "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). We therefore reject without further discussion Clowers's arguments that *Jones* was wrongly decided.

statutory sentencing range under the Fair Sentencing Act. We reject this strained interpretation as inconsistent with the statutory text.

When we explained in *Jones* that the "as if" clause requires district courts considering First Step Act motions to honor any drug-quantity finding that "could have been used to determine the movant's statutory penalty at the time of sentencing," we meant what we said. *Id.* If the jury—or the court, acting before *Apprendi*—made a drug-quantity finding that could have been used at the time of sentencing to determine the defendant's statutory penalties, the district court must use the same quantity to decide what the defendant's statutory penalties would have been if § 2 of the Fair Sentencing Act had been in effect at the time of the offense.

Our application of this principle to two of the defendants in *Jones*—Alfonso Allen and Warren Jackson—makes our meaning clear. Allen and Jackson each received a mandatory life sentence for a covered offense: conspiracy to possess with intent to distribute 50 grams or more of crack cocaine. *Id.* at 1294–95. Allen was charged in 2006; a jury found him guilty as charged and made a drug-quantity finding of 50 grams or more of crack cocaine for the drug conspiracy offense. *Id.* at 1294. The district court imposed a mandatory life sentence based on the jury's drug-quantity finding and Allen's two prior felony drug convictions. *Id.*; *see* 21 U.S.C. § 841(b)(1)(A)(iii) (2006).

Years later, in a postconviction proceeding, the district court found that Allen had been responsible for selling more than 420 grams of crack cocaine per week. *See Jones*, 962 F.3d at 1294–95. And several years after that, the court relied on that quantity finding (420 grams) to deny Allen's First Step Act motion, concluding that the retroactive application of the Fair Sentencing Act did not benefit him because of the large quantity of crack cocaine involved in his offense. *See id.*

On appeal, we explained that the district court was not bound by its earlier 420-gram finding during First Step Act proceedings because the district court's findings in habeas "did not trigger the statutory penalty" for Allen. *Id.* at 1303. In other words, the larger drug-quantity finding could not have been used "to determine the movant's statutory penalty at the time of sentencing." *Id.* That is true—both because the finding was not made until years after Allen was sentenced, and because Allen's sentencing took place after the Supreme Court clarified in *Apprendi* that such findings must be made by a jury beyond a reasonable doubt if they increase the penalty for a crime beyond the otherwise applicable statutory maximum. *See id.* at 1294–95; *Apprendi*, 530 U.S. at 490.

To determine Allen's new statutory sentencing range "as if" § 2 of the Fair Sentencing Act "were in effect at the time the covered offense was committed," we used the only drug-quantity finding that "could have been used" by the sentencing court to determine Allen's statutory penalties—the jury's finding that his

offense involved 50 grams or more of crack cocaine. *Jones*, 962 F.3d at 1303–04. Under the Fair Sentencing Act, the statutory penalty for a drug-trafficking offense involving 50 grams of crack cocaine would have been 10 years to life in prison instead of the mandatory life sentence Allen received. *Id.* at 1304; *compare* 21 U.S.C. § 841(b)(1)(A)(iii) (2006), *with* 21 U.S.C. § 841(b)(1)(A)(iii)–(B)(iii) (2012). Allen, therefore, could have received a lower minimum sentence and was eligible for relief under the First Step Act. *Jones*, 962 F.3d at 1304.

For Jackson, the story was different. Like Allen, Jackson was charged with possessing with intent to distribute 50 grams or more of crack cocaine. *Id.* at 1295. The jury found Jackson guilty as charged without making any more specific drug-quantity finding. *Id.* Jackson was subject to a mandatory life sentence because his offense involved more than 50 grams of crack cocaine and he had three prior felony drug offenses. *Id.*; *see also* 21 U.S.C. § 841(b)(1)(A)(iii) (1994). But Jackson's sentencing court—unlike Allen's—made a drug-quantity finding at the time of sentencing. It found that his offense involved 287 grams of crack cocaine. *Jones*, 962 F.3d at 1295.

Jackson later moved for a reduction of his life sentence under the First Step Act. *Id.* On appeal from the denial of that motion, we used the sentencing court's drug-quantity finding—which was above the updated threshold quantity of 280 grams established in the Fair Sentencing Act—to determine that Jackson would have been subject to a mandatory life sentence even if the

Fair Sentencing Act had been in effect when he committed his offense.[3]  *Id.* at 1304.  We also said that because Jackson would face the same mandatory minimum statutory penalty under the Fair Sentencing Act, the district court was not authorized to reduce his sentence under the First Step Act.  *Id.*

Clowers is in the same boat as Jackson.  At his sentencing proceeding, the sentencing court found that his offense involved more than 15 kilograms of crack cocaine, a finding that could have been—and in this case was—used to determine whether Clowers was subject to the mandatory life sentence under § 848(b).  The district court was therefore bound by the sentencing court's drug-quantity finding when determining his new statutory penalties for purposes of his First Step Act motion.

Contrary to Clowers's assertion, the focus at sentencing on his Sentencing Guidelines range does not indicate that the court's drug-quantity finding was used only for Guidelines purposes.  At

---

[3] We note that the sentencing court's drug-quantity finding was not needed to determine Jackson's statutory penalties.  His indictment charged a quantity of crack cocaine (more than 50 grams) that, when coupled with his prior offenses, was sufficient (before the Fair Sentencing Act) to trigger the highest statutory penalty, and the jury found him guilty as charged.  *Jones*, 962 F.3d at 1295.  But according to the prevailing understanding of the law at the time, the court's finding that Jackson's offense involved 287 grams of crack cocaine "could have been used" to determine his statutory penalties at sentencing.  *Id.* at 1303; *see United States v. Sanchez*, 269 F.3d 1250, 1266–67 & n.28 (11th Cir. 2001) (en banc) (describing pre-*Apprendi* practice), *abrogated by Alleyne*, 570 U.S. at 103.

the time, the sentencing court generally was required to make factual findings relevant to various statutory sentence enhancements as well as to the applicable Guidelines range. Where both calculations required a drug-quantity finding, a single finding by the court could serve both purposes. *See, e.g.*, *Chapman v. United States*, 500 U.S. 453, 455–56 (1991); *United States v. Sanchez*, 269 F.3d 1250, 1270 (11th Cir. 2001) (en banc), *abrogated by Alleyne*, 570 U.S. at 103. It appears that the parties focused on the 15-kilogram quantity of crack cocaine that triggered the highest Guidelines range because it was the largest quantity that would have had any impact on the court's sentencing calculations.

We also reject Clowers's characterization of the sentencing court's finding that his offense involved more than 15 kilograms of crack cocaine as a legal finding that his offense involved enough drugs to trigger the highest Guidelines range, rather than a factual finding. The court's drug-quantity finding had legal implications, of course, as such findings nearly always do. The same can be said of a jury verdict that includes a finding that the defendant's offense involved a quantity of drugs above the statutory threshold. But the legal significance of the finding does not change its factual nature.

We conclude, therefore, that the district court correctly used the 15-kilogram finding to determine what the statutory penalty would have been for Clowers under the Fair Sentencing Act. And because this finding would have compelled the sentencing court to impose the same mandatory life sentence even if the Fair Sentencing Act had been in effect at the time, the district court

correctly concluded that it could not reduce Clowers's sentence under the First Step Act.

*        *        *

Congress enacted the Fair Sentencing Act to reduce disparities between prison sentences for future offenses involving crack cocaine and powder cocaine. And in the First Step Act, Congress decided to extend the same reduction in sentencing disparities to past offenses. The language of that statute is straightforward—eligible crack offenders can now be resentenced "as if" the Fair Sentencing Act had already been in place during their original sentencing.

What Congress did not do is offer a sentence reduction below the statutory minimum under the Fair Sentencing Act, or vacate drug-quantity findings that would have triggered that minimum at the time of the movant's offense. Though Congress could have chosen any number of ways to bring relief to crack-cocaine offenders, we must stick with the one it chose. We therefore **AFFIRM** the district court's judgment.