[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13838

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

REGINALD L. MCCOY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:90-cr-00132-CEH-AAS-4

_____

Before JORDAN, NEWSOM, Circuit Judges, and GRIMBERG,[*] District Judge.

JORDAN, CIRCUIT JUDGE:

Time travel has long been popular in literature and pop culture. *See, e.g.,* H.G. Wells, The Time Machine (1895); *Life on Mars* (BBC One 2006-07). Every once in a while, the possibility of going back in time becomes a reality in law, and courts are faced with trying to figure out how an alternative legal reality would have played out in the past. Take § 404(b) of the First Step Act, Pub. L. 115-391, 132 Stat. 5194 (2018). It affords some defendants a backwards-looking remedy—an opportunity to go back and avail themselves of reduced statutory penalties for crack cocaine offenses that were implemented (by the Fair Sentencing Act, Pub. L. 111-220, 124 Stat. 2372 (2010)) after their sentences became final. *See Concepcion v. United States*, 142 S. Ct. 2389, 2402 (2022) ("[T]he 'as if' clause [in § 404(b)] requires a district court to apply the Fair Sentencing Act as if it applied at the time of the commission of the offense[.]").

Reginald McCoy, whose First Step Act motion for a reduction of sentence was denied by the district court, envisions a version of the First Step Act that allows a court to travel back in time and correct any "historical" error that may have occurred at his original sentencing. *Cf. Quantum Leap* (NBC Television 1989-93).

---

[*] Honorable Steven D. Grimberg, United States District Judge for the Northern District of Georgia, sitting by designation.

He asks us to hold that he can now object—through a § 404(b) motion—to a drug-quantity finding made at his original sentencing because at that time he did not know that the statutory sentencing thresholds would be lowered in the future and therefore had no reason to lodge any objections. We decline the request and affirm the district court's denial of Mr. McCoy's motion.

## I

In 1990, a grand jury charged Mr. McCoy with conspiracy to possess 50 grams or more of crack cocaine with intent to distribute, and possession of 50 grams or more of crack cocaine with intent to distribute. *See* 21 U.S.C. §§ 841(a)(1), 846 (1988 version). Prior to trial, the government filed a notice under 21 U.S.C. § 851. The notice informed Mr. McCoy that, if convicted, he was subject to an enhanced statutory sentence based on his prior felony drug convictions.

A jury ultimately found Mr. McCoy guilty of both charges. Consistent with the law at that time, the jury did not make a drug-quantity finding because Mr. McCoy "was prosecuted before *Apprendi v. New Jersey*[, 530 U.S. 466 (2000),] made clear that drug-quantity findings that increase a defendant's punishment must be made by a jury based on a standard of proof beyond a reasonable doubt." *United States v. Jones*, 962 F.3d 1290, 1293 (11th Cir. 2020), *vacated by Jackson v. United States*, 143 S. Ct. 72 (2022), *reinstated by United States v. Jackson*, 58 F.4th 1331, 1333 (11th Cir. 2023).

According to the presentence investigation report, the amount of crack cocaine attributable to Mr. McCoy was

approximately 2,848.5 grams.  Because that amount was at least 50 grams and he had two prior felony drug convictions, triggering an enhanced sentence under § 851, the 1988 version of § 841(b)(1)(A)(iii) mandated a term of life imprisonment.  Otherwise, the total offense level of 42 and criminal history category of III would have provided for an imprisonment range of 360 months to life under the Sentencing Guidelines.

Mr. McCoy did not object to the report.  Nor did he contest the drug quantity attributable to him at the sentencing hearing.  The district court adopted the report and imposed concurrent sentences of life imprisonment.  We subsequently affirmed the convictions and sentence on direct appeal.  *See United States v. Smith*, 41 F.3d 667 (11th Cir. 1994) (table).

In 2019, Mr. McCoy filed a series of counseled motions to reduce his sentence under § 404(b) of the First Step Act.  Following a hearing, the district court denied him relief.

The district court concluded that it lacked authority to reduce the sentence because Mr. McCoy was already serving the lowest statutory penalty available to him under the Fair Sentencing Act, which was life imprisonment.  The court reasoned that the government provided him sufficient notice of his enhanced sentence under § 851 and, pursuant to *Jones*, he could not relitigate his judge-made drug quantity finding, such that he remained subject to a sentence of life imprisonment even under the Fair Sentencing Act's amended penalties.

Alternatively, the district court ruled that it would not have exercised its discretion to reduce the sentence even if Mr. McCoy was eligible. This was because of the large quantity of crack cocaine attributable to him and his "ongoing and excessive disciplinary infractions" while incarcerated.[1]

Mr. McCoy now appeals.

## II

When Mr. McCoy was sentenced, the statutory penalties for his narcotics offenses involving crack cocaine were equal to the statutory penalties for the same offenses involving 100 times as much powder cocaine. *See Jones*, 962 F.3d at 1296. To illustrate, "[a] statutory range of 10 years to life imprisonment applied to drug traffickers dealing in 50 grams or more of crack cocaine or 5,000 grams or more of powder cocaine." *Id.* (citing the 2006 version of § 841(b)(1)(A)). And offenders like Mr. McCoy who had prior felony drug convictions were subject to enhanced statutory penalties. *See* § 841(b)(1)(A) (1988 version).

In 2010, Congress enacted the Fair Sentencing Act to remediate the vast disparity in sentences for narcotics offenses involving crack and powder cocaine. *See Dorsey v. United States*, 567 U.S. 260, 268-69 (2012). As relevant here, the Act increased the drug amount required to trigger the highest mandatory minimum sentence for crack cocaine offenses from 50 grams to 280 grams (for the

---

[1] Given our resolution of Mr. McCoy's appeal, we do not address the district court's alternative ruling.

21-13838                Opinion of the Court                6

statutory range of 10 years to life). *See id.* at 269; Fair Sentencing Act, § 2(a)(1). But the Act applied only to defendants sentenced on or after its effective date. *See Jones*, 962 F.3d at 1297.

In 2018 Congress enacted the First Step Act, which made the Fair Sentencing Act's crack cocaine changes retroactive. *See* First Step Act, § 404(a). As a general matter, federal courts do not have the authority to modify a term of imprisonment except to the extent expressly authorized by statute. *See* 18 U.S.C. § 3582(c); *United States v. Diaz-Clark*, 292 F.3d 1310, 1319 (11th Cir. 2002). But § 404(b) of the First Step Act granted district courts which had imposed a sentence for a "covered offense" the authority to "impose a reduced sentence as if [§§] 2 and 3 of the [Fair Sentencing Act] were in affect at the time the covered offense was committed." First Step Act, § 404(b).

### III

"We exercise plenary review in determining whether a district court has authority to reduce a sentence under the First Step Act." *United States v. Gonzalez*, 71 F.4th 881, 884 (11th Cir. 2023).

The question for us is whether Mr. McCoy was eligible for relief under the First Step Act. To answer that question, we utilize a two-part framework. *See Jones*, 962 F.3d at 1301-03.

We first ask whether Mr. McCoy has a "covered offense." A movant has a covered offense if he was "sentenced before the effective date of the Fair Sentencing Act for an offense that includes as an element the quantity of crack cocaine described in § 841(b)(1)(B)(iii)." *United States v. Clowers*, 62 F.4th 1377, 1380

(11th Cir. 2023).  Everyone agrees that Mr. McCoy has a covered offense.

We turn, therefore, to the "as-if" clause in § 404(b) of the First Step Act.  In *Jones*, 962 F.3d at 1303, we held that the "as-if" clause imposes two relevant limits.  First, it precludes a district court from reducing a sentence "if [the movant] received the lowest statutory penalty that also would be available to him under the Fair Sentencing Act." *Id.*  Second, "in determining what a movant's statutory penalty would be under the Fair Sentencing Act, the district court is bound by a previous finding of drug quantity that could have been used to determine the movant's statutory penalty at the time of sentencing." *Id.*

## A

As to the first limitation, we agree with the district court that Mr. McCoy received the lowest statutory penalty that would be available to him under the Fair Sentencing Act.  Our reasoning is straightforward.  Because he was found responsible for over 2.8 kilograms of crack cocaine, increasing the drug quantity threshold from 50 grams to 280 grams would have no effect on his statutory penalty range of 10 years to life, and the mandatory sentence under § 851 would still be life imprisonment.  *Compare* § 841(b)(1)(A)(iii) (2018 version) *with* § 841(b)(1)(A)(iii) (1988 version).  And, as we will explain, the district court was entitled to rely on the prior judge-made, pre-*Apprendi*, drug quantity finding.

Mr. McCoy's attempt to revisit the prior drug-quantity finding is based on the "could have been used" language from *Jones*.

But we have explained what that phrase means, and he is bound by ink past spilled. Nothing prohibits a district court "from relying on earlier judge-found facts," including those made pre-*Apprendi*. *See Jones*, 962 F.3d at 1302-03. "If the jury—or the court, acting before *Apprendi*—made a drug-quantity finding that could have been used at the time of sentencing to determine the defendant's statutory penalties, the district court must use the same quantity to decide what the defendant's statutory penalties would have been if § 2 of the Fair Sentencing Act had been in effect at the time of the offense." *Clowers*, 62 F.4th at 1382.

In *Concepcion*, 142 S. Ct. at 2404, the Supreme Court held that district courts, after determining that a defendant is eligible for relief under § 404 of the First Step Act, can "consider intervening changes of law or fact" as factors in deciding whether to exercise their discretion to grant relief. After *Concepcion*, however, we again rejected the contention that the First Step Act gives district courts "the authority to ignore [an] earlier judge-made drug quantity finding in calculating [a movant's] statutory sentencing range." *Jackson*, 58 F.4th at 1336, 1337 (holding that, where *Apprendi* was decided during the pendency of movant's direct appeal, a motion under the First Step Act could not be used to correct an error based on *Apprendi*). In so doing, we held that a movant cannot use a First Step Act motion to relitigate factual predicates for sentencing enhancements. *See id.* at 1338. *Accord Concepcion*, 124 S. Ct. at 2402 n.6 (stating that a district court "cannot . . . recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act").

At its core, Mr. McCoy's First Step Act motion is an attempt to relitigate his drug quantity finding.  Under *Jones* and *Jackson*, this is something he cannot do.  *See United States v. Williams*, 63 F.4th 908, 912 (11th Cir. 2023) (rejecting the use of a First Step Act motion as a "veiled collateral attack").  The sentencing court was constitutionally empowered to make a drug quantity finding at the 1991 sentencing hearing.  As a result, its finding that over 2.8 kilograms of crack cocaine were attributable to Mr. McCoy was properly used to determine his statutory penalty.  *See Jones*, 962 F.3d at 1303.  For that reason, he is not entitled to relief under the First Step Act.

Mr. McCoy attempts to create a distinction between what he refers to as statutory drug quantity findings and Sentencing Guidelines drug quantity findings.  He argues that, because in 1991 the crack cocaine amount required to trigger his statutory penalty range was 50 grams, any finding above that threshold was merely advisory.  In his view, the sentencing court's finding that he was responsible for just over 2.8 kilograms of crack cocaine was effective only for purposes of the Sentencing Guidelines (the Sentencing Guidelines finding) and the only amount that could have been used to determine his statutory penalty range was 50 grams (the statutory finding).

We reject this proposed distinction.  There are, of course, situations where a district court declines to make certain factual findings because they make no difference to the sentence to be imposed.  But when a sentencing court makes a finding on the

amount of narcotics attributable to a defendant—a factual determination on a historical matter—that finding controls for purposes of the statutory sentencing range and for purposes of the Sentencing Guidelines. *See United States v. Coy*, 19 F.3d 629, 636-37 (11th Cir. 1994).

**B**

Apparently understanding that we have shut the door on using § 404(b) of the First Step Act to mount a belated *Apprendi*-type challenge, McCoy pivots to a different argument in an attempt to avoid the sentencing court's drug quantity finding. He maintains that the retroactive application of the Fair Sentencing Act vis-à-vis the First Step Act—as interpreted in cases like *Jones* and *Jackson*—violates due process. His argument goes like this. If we go back and pretend, as we must, that the Fair Sentencing Act was in effect at the time of his 1991 sentencing hearing, he was never put on notice that the Act's amended version of § 841 would later provide that a drug quantity finding of 280 grams or more would trigger a statutory range of 10 years to life. Without such notice, he had no reason to object to the drug quantity amount at sentencing or on direct appeal. As a result, it would be unfair (and unconstitutional) to bind him now to the finding that he was responsible for over 2.8 kilograms of crack cocaine.

In effect, Mr. McCoy asks us to hold that due process requires that a defendant receive notice at the time of sentencing of how hypothetical, future, and ameliorative criminal legislation

might affect his rights, even though the terms of such legislation are then unknown. The argument is creative, but it fails.[2]

As a general mater, "[d]ue process traditionally requires that criminal laws provide prior notice both of the conduct to be prohibited and of the sanction to be imposed," *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 836 (1994), but Mr. McCoy is not complaining about a punitive law which was retroactively applied to him. He is, instead, asserting that he did not have to object to a drug-quantity finding at his original sentencing hearing because he did not know (and was not told) that the finding could one day make a difference if Congress chose to pass remedial sentencing legislation like the Fair Sentencing Act and the First Step Act.

Because the Due Process Clause of the Fifth Amendment "contains no description of those processes which it was intended to allow or forbid," and "does not even declare what principles are to be applied to ascertain whether it be due process," the Supreme

---

[2] We acknowledge Judge Grimberg's concern that defendants like Mr. McCoy are placed in a difficult situation. But, as we have explained and as Judge Grimberg acknowledges, Supreme Court and Eleventh Circuit precedent does not allow Mr. McCoy to use a First Step Act motion to relitigate factual findings made at his sentencing hearing. *See Concepcion*, 124 S. Ct. at 2402 n.6 (explaining that a district court cannot "recalculate a movant's benchmark Guidelines range in any way other than to reflect the retroactive application of the Fair Sentencing Act"); *Clowers*, 62 F.4th 1384 ("What Congress did not do is . . . vacate drug-quantity findings that would have triggered that minimum at the time of the movant's offense.").

Court sometimes looks to the "settled usages and modes of proceeding existing in the common and statute law of England . . . and which are shown not to have been unsuited to their civil and political condition by having been acted on by them after the settlement of this country." *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 276-77 (1855). But in other instances, the Court has said that due process is not a concept limited by English law at the time of the Constitution's adoption. Because the "broad and general maxims of liberty and justice [in the Constitution] ha[d] in our system a different place and performed a different function from their position and office in English constitutional history and law, they would receive and justify a corresponding and more comprehensive interpretation," and "it would be incongruous to measure and restrict them by the ancient customary English law[.]" *Hurtado v. California*, 110 U.S. 516, 532 (1884) (interpreting and applying the Due Process Clause of the Fourteenth Amendment). Regardless of the appropriate constitutional vantage point, we have not been able to find any authority—foreign or domestic, old or new—for the proposition that a criminal defendant must be advised of the possible consequences of hypothetical, future, and ameliorative criminal legislation whose terms are unknown.

We are not surprised by the lack of authority supporting Mr. McCoy's argument. Courts are not oracles of things to come, and it is impossible for them to provide notice of a hypothetical future law whose passage is at best uncertain and whose operative text is anyone's guess. *Cf.* William Shakespeare, *The Tragedy of Macbeth*, Act I, Scene 3, lines 58-60 (1606) (Banquo to the Three Witches: "If

you can look into the seeds of time / And say which grain will grow and which will not / Speak then to me . . . ").

The little we have been able to find, though not directly on point, cuts against Mr. McCoy's vision of a clairvoyant Due Process Clause. For example, in *Williams v. United States Department of Transportation*, 781 F.2d 1573, 1579 (11th Cir. 1986), we rejected the due process claim of a pilot that the Coast Guard, in seeking to impose civil penalties on him for negligence, should have provided him with "heightened due process protections because his state pilot's license was at stake." We said that "[t]his claim [was] speculative at best [in part because] . . . any allegation regarding potential future consequences [was] purely hypothetical." *Id.* In addition, the Supreme Court has rejected collateral challenges to guilty pleas based on future legal developments. *See United States v. Addonizio*, 442 U.S. 178, 186-87 (1979) (although changes in the Parole Commission's policies affected a defendant's eligibility for parole, the claimed error—"that the judge [at sentencing] was incorrect in his assumptions about the future course of parole proceedings"—was not, among other things, a claim of a constitutional violation subjecting the sentence to collateral attack under 28 U.S.C. § 2255); *Brady v. United States*, 397 U.S. 742, 756-57 (1970) (holding that a defendant who pled guilty to federal kidnapping could not impugn the propriety of his plea under 28 U.S.C. § 2255 based on a later development striking down the death penalty for that offense). Again, these cases are not controlling, but they confirm our conclusion that Mr. McCoy was not entitled to notice in 1991 of what

21-13838                Opinion of the Court                14

the Fair Sentencing Act and the First Step Act would provide decades later.

## IV

We affirm the district court's denial of Mr. McCoy's motion under § 404(b) of the First Step Act.

**AFFIRMED.**

21-13838                GRIMBERG, J., Concurring                1

GRIMBERG, District Judge, concurring:

I join in the judgment of the majority, affirming the district court's denial of McCoy's motion under § 404(b) of the First Step Act. I agree with the majority's assessment that, at its core, McCoy's motion seeks to litigate the drug quantity finding made at his sentencing, which is forbidden by our precedents. I write separately to express two concerns with this outcome.

First, I am troubled by what I perceive as a due process double standard. To be sure, due process requires that a defendant be given pre-sentence notice of drug quantities that could trigger an enhanced sentence. *United States v. Coy,* 19 F.3d 629, 637 (11th Cir. 1994). At the time McCoy was sentenced, that quantity was 50 grams or more of crack cocaine, and he indisputably received that notice. McCoy's position, however, is that because he was only on notice that a drug quantity finding of 50 grams or more (not 280 grams) would trigger an enhanced penalty, he had no reason to object to any drug quantity finding beyond 50 grams, whether that be 51 grams or, as it turned out, 2,848.5 grams. In other words, once his drug quantity finding hit 50 grams, there was no reason for him to dispute the finding since the enhanced penalty had already kicked in.

The majority frames McCoy's position as arguing that he did not have to object to a drug-quantity finding at his original sentencing hearing because he *did not know (and was not told)* that the finding could one day make a difference. I see it slightly differently. McCoy *could not have known* that a quantity finding beyond 50

21-13838          GRIMBERG, J., Concurring          2

grams could one day make a difference. This distinction colors my perspective on the due process question. I agree that the Constitution does not require that criminal defendants be advised of possible consequences of hypothetical, future, ameliorative criminal legislation. That is impractical. But equally impractical is the notion that McCoy should have preserved his rights on the off-chance that doing so might make a difference in some hypothetical, future, ameliorative criminal legislation. Hence, the double standard: while courts are not oracles of things to come, neither are criminal defendants.

We recognize this principle when it comes to intervening changes in our precedent. For example, our circuit recently recognized an exception to the doctrine of invited error in the "harsh circumstances" where settled law changed while the case was on appeal. *United States v. Duldulao*, --- F.4th ---, Case No. 20-13973, 2023 WL 8251507, at *8 (11th Cir. Nov. 29, 2023). In so doing, our circuit observed that the defendant in that case had not demonstrated a "'lack of diligence . . . but merely a want of clairvoyance.'" *Id.* (quoting *Joseph v. United States*, 574 U.S. 1038, 135 S. Ct. 705, 706 (2014) (Kagan, J., respecting the denial of certiorari)). The same can be said to describe McCoy.

My second concern is a pragmatic one and builds on the first. As a district judge, I know first-hand how busy our trial courts are. And so it is the proverbial music-to-my-ears when counsel during a sentencing hearing announces that he or she will not contest or will even withdraw an objection to a certain factual finding in

21-13838          GRIMBERG, J., Concurring          3

the presentence report after recognizing that the finding does not materially change the sentencing options for the defendant.

Is the take-away from this opinion and our circuit precedents that doing so risks forfeiting a criminal defendant's rights under some unforeseeable criminal legislation in the future? Must counsel now preserve their client's eligibility for some possible future law by litigating each and every factual finding in the presentence report, no matter how meaningless it might seem at the time? If so, it does not take clairvoyance to see scenarios where a district judge might find himself or herself sitting through a lengthy sentencing-turned-bench trial where he or she must decide whether a defendant should be held accountable for, say, 290 grams of cocaine rather than only 280 grams of cocaine, even though the sentencing options (on *that* day) will be the exact same. Because one never knows what the hypothetical, future, ameliorative "Second Step Act" might allow.

I see the flip side of this point, too. If limited judicial resources are the concern it could likewise strain them to allow defendants previously sentenced to litigate factual findings years, if not decades, later. Although, given the choice, I would prefer to spend my time on cases where those factual findings most certainly matter over the aforementioned cases where they only hypothetically might. The larger issue, of course, is that allowing retroactive litigation of sentencings imposes a burden of proof on the government that could be very difficult to satisfy given the passage of time.

21-13838                 GRIMBERG, J., Concurring                          4

Unfortunately I do not have a solution, and I do not know that it's my role to suggest one even if I did.  But I raise these issues to make the broader point that legislation which allows for any degree of retroactivity in our criminal laws, no matter how well-intended, can create practical implications that make it incredibly difficult to administer fairly and equitably.

McCoy waived his right to litigate the drug quantity at his sentencing, but he did so at a time when he *could not have known* the implications that waiver would later have on his eligibility for criminal justice reform legislation. That strikes me as fundamentally unfair. But that is what our law requires.