[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-11628

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ELLIOT RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:12-cr-20339-JIC-2

_____

Before WILSON, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant Elliot Rivera appeals the district court's denial of his *pro se* motion to vacate his 2013 convictions for conspiring to use an interstate commerce facility and using an interstate commerce facility to commit murder for hire in violation of 18 U.S.C. § 1958. We conclude that the district court lacked subject matter jurisdiction to rule on the motion. Defendant filed the motion pursuant to Rule 60(d)(3) of the Federal Rules of Civil Procedure, which does not apply in criminal proceedings and thus does not authorize a district court to vacate a criminal conviction. Construing Defendant's motion liberally, the relief he seeks would arise, if at all, under 28 U.S.C. § 2255. However, Defendant has already filed a § 2255 motion that was denied on the merits, and he has not obtained the authorization from this Court necessary to confer jurisdiction on the district court to consider a second or successive § 2255 motion. Accordingly, we **VACATE** the district court's order denying Defendant's Rule 60(d)(3) motion and **REMAND** the case so that the motion can be dismissed for lack of jurisdiction.

## BACKGROUND

Defendant was convicted after a ten-day jury trial in 2013 of conspiring to use and using an interstate commerce facility to commit murder for hire in violation of 18 U.S.C. § 1958. We set out the facts underlying Defendant's convictions in detail in our opinion ruling on his direct appeal. *See United States v. Rivera*, 780 F.3d 1084,

1088–90 (11th Cir. 2015).  Briefly, the convictions arose from Defendant's attempt to hire a hit man to murder Felipe Caldera, a person who owed Defendant a large sum of money and on whom Defendant held a life insurance policy.  *See id.* at 1088.

The evidence presented at trial showed that Defendant loaned Caldera approximately $4 million between 2004 and 2010 as a purported investment in Caldera's various businesses.  *Id.*  When Caldera fell behind in his repayments, Defendant suggested that Caldera take out a $5 million life insurance policy and name Defendant as the beneficiary of the policy.  *Id.*  Caldera purchased a life insurance policy as Defendant suggested, initially naming his wife as the beneficiary but later assigning ownership of the policy to Defendant.  *Id.*  Defendant paid the premiums on the policy.  *Rivera*, 780 F.3d at 1088.

In March 2012, Defendant contacted an associate, Ricardo Rodriguez.  *Id.*  Defendant told Rodriguez he was looking to pay $100,000 to hire a hit man to kill an individual who had stolen $4 million from him.  *Id.*  Rodriguez initially demurred, but he finally agreed to try and find a hit man after repeated requests by Defendant.  *Id.* at 1089.  Rodriguez subsequently contacted a friend named Jorge, who agreed to help find a hit man for $50,000.  *Id.*  Jorge put Rodriguez in touch with a supposed hit man named Arturo.  *Rivera*, 780 F.3d at 1089.  Unbeknownst to Rodriguez, both Jorge and Arturo were FBI informants.  *Id.*

In a recorded conversation in April 2012, Rodriguez told Arturo he wanted him to kill a person who had stolen $4 million from

his family. *Id.* Arturo agreed to do the job for $50,000 and asked Rodriguez for the target's information. *Id.* Rodriguez gave Arturo Caldera's name, his general address, and the make and model of his car. *Id.* At Arturo's request, Rodriguez gave Arturo a gun he had obtained for the job and agreed to deliver a $25,000 advance for the hit. *Rivera*, 780 F.3d at 1089.

Rodriguez later reported to Defendant that he had hired a hit man, who had agreed to do the job for $50,000 but wanted a $25,000 advance. *Id.* Defendant gave Rodriguez $25,000 in cash and told him he would pay the remaining $25,000 after the job was done. *Id.* Rodriguez subsequently gave the $25,000 to Arturo, at which point the FBI arrested Rodriguez. *Id.* Rodriguez immediately called his wife, Lucienne, told her he had been arrested, and asked her to call Defendant. *Id.* Lucienne contacted Defendant, who gave her money to hire a lawyer. *Rivera*, 780 F.3d at 1089.

Within a few days, Rodriguez and Lucienne agreed to cooperate with the Government, after which time Lucienne wore a wire and recorded several conversations with Defendant. *Id.* In these conversations, Defendant agreed to give Lucienne $100,000 in exchange for her husband's silence and for her delivery of a recording she claimed to have of a conversation between Defendant and Rodriguez concerning their arrangement for the hit. *Id.* at 1090. Defendant later gave Lucienne a $20,000 advance on the promised $100,000, after which the FBI arrested Defendant. *Id.* At the time of Defendant's arrest, the FBI found papers in his truck showing

Caldera's name, address, and license plate number, as well as Lucienne's license plate number.  *Id.*

Defendant was indicted in May 2012 on one count of conspiring to use and one count of using an interstate commerce facility to commit murder for hire, in violation of 18 U.S.C. § 1958.  He was convicted of both counts in March 2013 after a ten-day jury trial.  The district court sentenced Defendant to 120 months on the conspiracy count and 115 months on the murder for hire count, to be served consecutively and to be followed by three years of supervised release.

This Court affirmed Defendant's convictions on direct appeal, rejecting his arguments that: (1) Lucienne's recorded remarks during her conversations with Defendant contained inadmissible hearsay, (2) Lucienne's testimony about her understanding of her conversations with Defendant should have been excluded as improper witness opinions, and (3) the prosecutor engaged in prejudicial misconduct by interjecting his personal views of the evidence in closing argument and asking Defendant on cross-examination whether witnesses who had testified contrary to him "were lying." *See Rivera*, 780 F.3d at 1092–1102.  The Court acknowledged that the prosecutor's "were they lying" questions were improper, but concluded any error was harmless because of the "abundant evidence presented at trial to support a conclusion that, beyond any reasonable doubt, Defendant was guilty" of the charged offenses. *See id.* at 1098.  The Court described the evidence as "irrefutable" and "very damning." *Id.* at 1097–98.

Defendant filed a timely *pro se* motion to vacate his convictions pursuant to 28 U.S.C. § 2255.[1] In support of the motion, Defendant argued that his counsel provided ineffective assistance at trial by failing to: (1) obtain Defendant's consent before stipulating to the interstate commerce element of his offense and contest that element, (2) object to the false testimony of Lucienne and impeach other Government witnesses who provided inconsistent testimony, and (3) move for a mistrial based on the prosecutor's improper comments during cross-examination. Defendant also argued that his due process rights were violated when the prosecutor allowed its witnesses to present false testimony, withheld material evidence regarding the recorded conversations introduced at trial, and falsely suggested to the jury that Defendant had admitted giving Rodriguez $25,000.

The district court denied Defendant's § 2255 motion. First, the court held that Defendant's due process claims were procedurally defaulted because he did not raise them on direct appeal and he failed to establish cause and prejudice or actual innocence, as would be required to raise such claims for the first time on

---

[1] Defendant filed his initial § 2255 motion within the applicable one-year statute of limitations, but that motion was dismissed without prejudice for failure to comply with court orders. He filed an amended motion outside the one-year period, but the district court held it was timely as to all claims that had been asserted in the initial motion. The court dismissed as untimely one claim that was asserted for the first time in the amended motion relating to the Government's alleged failure to disclose that it had paid Lucienne for her testimony at trial.

collateral review.  As to his ineffective assistance claim regarding the interstate commerce issue, the court cited evidence showing that Defendant knowingly and voluntarily agreed to stipulate to the interstate commerce element, and it noted that there was ample evidence in the record to satisfy that element.  Regarding counsel's failure to object to Lucienne's false testimony or seek a mistrial based on prosecutorial misconduct, the court held that Defendant's claims concerning these issues had been rejected on direct appeal and thus could not support habeas relief.  Finally, with respect to counsel's failure to impeach Government witnesses, the court held Defendant could not show any prejudice given the "overwhelming evidence of [his] guilt."

The district court declined to issue Defendant a certificate of appealability ("COA") to appeal its ruling on his § 2255 motion. Several days later, Defendant filed a *pro se* motion for the court to reconsider its ruling, but that motion was denied.  Defendant then attempted to appeal to this Court, but the Court denied his request for a COA.

In addition to his § 2255 motion, Defendant has filed numerous other motions seeking collateral review of his convictions. While his § 2255 motion was pending, Defendant filed a motion for a new trial or dismissal of his convictions pursuant to Rule 33 of the Federal Rules of Criminal Procedure.  In support of his Rule 33 motion, Defendant asserted various *Brady* violations concerning evidence of Felipe Caldera's bank statements and due process violations resulting from the Government's failure to correct allegedly

false testimony by its witnesses concerning Defendant's agreement to pay Lucienne $100,000 to buy her husband's silence and a "fake" recording of Defendant's conversations with Rodriguez concerning the hit. The district court denied Defendant's motion as untimely.[2] Defendant filed a motion for the district court to reconsider its ruling on his Rule 33 motion, but the court denied it.

Shortly thereafter, Defendant filed two motions seeking an order directing his counsel, Christopher Lyons, to produce documents related to his criminal case. Defendant argued in these motions that he needed the documents to pursue his still-pending § 2255 motion. The district court denied the motions, noting that Defendant's criminal case had concluded over four years prior and that the appropriate forum for him to obtain the discovery he requested was in his § 2255 proceeding. Defendant appealed the court's orders to this Court, but the appeal was dismissed for failure to prosecute.

After the district court denied his § 2255 motion, Defendant filed a motion under Rule 36 of the Federal Rules of Criminal Procedure to correct alleged errors in his indictment, the PSR, his conviction, and the sentencing transcript in his case. In support of the motion, Defendant argued that his indictment incorrectly charged

---

[2] As the district court noted, a Rule 33 motion based on newly discovered evidence must be filed within three years of the verdict and such a motion based on any other ground must be filed within 14 days of the verdict. *See* Fed. R. Crim. P. 33(b). The verdict in this case was entered in March 2013 and final judgment was entered against Defendant in June 2013, but he did not file his Rule 33 motion until December 2016.

him with two separate offenses for the same crime, and that the PSR and sentencing transcript repeated the error. The district court denied Defendant's motion, noting that Rule 36 provides for the correction of clerical errors in a criminal judgment or record but "may not be used to make a substantive alteration to a criminal sentence." Because Defendant's motion sought to substantively alter his sentence, the court held it was meritless.

Defendant filed the motion at issue in this appeal in March 2020. He styled the filing as a motion to set aside his conviction pursuant to Rule 60(d)(3) of the Federal Rules of Civil Procedure due to "fraud on the court." In support of the motion, Defendant cited: (1) FBI agent Jeffrey Andresen's allegedly false statements in a sworn affidavit supporting the charges against Defendant, including statements concerning Defendant giving Rodriguez information about Caldera, the phone number Defendant used to discuss the murder plot, and the date Rodriguez instructed his wife to cooperate with the Government, among other things, (2) the prosecutor's alleged misstatements to the jury concerning the interstate commerce element of the offense and a May 2012 phone call implicating Defendant in the murder plot, and (3) defense attorney Lyons's false representation that the interstate commerce element of the offense was satisfied. According to Defendant, these statements revealed a calculated scheme by the FBI, the prosecutor, and his defense attorney to defraud the court, which warranted setting aside his conviction pursuant to Rule 60(d)(3) of the Federal Rules of Civil Procedure.

The district court construed Defendant's filing as a motion for relief under Rule 60(b) of the Federal Rules of Civil Procedure, and denied it as untimely.  As the court noted, Rule 60(b) requires that motions seeking relief under that provision be made "no more than a year after the entry of the judgment or order or the date of the proceeding."  Final judgment was entered against Defendant in June 2013, well more than a year before he filed his present Rule 60 motion.  The court observed further that Defendant's judgment was affirmed in April 2015 and his § 2255 motion was denied in May 2018, both of which decisions also occurred over a year prior to when he filed his Rule 60 motion.

Defendant moved for reconsideration, pointing out that he filed his motion under Rule 60(d)(3), rather than under Rule 60(b) as the district court assumed.  According to Defendant, the one-year time limit did not apply to Rule 60(d)(3) motions, and the court thus erred by denying his motion as untimely.

The court denied Defendant's motion for reconsideration.  Although it acknowledged that a judgment can be set aside under Rule 60(d)(3) for fraud on the court at any time, it stated that establishing fraud on the court under that provision is significantly more difficult than showing fraud or misconduct under Rule 60(b).  Specifically, Rule 60(d)(3) is only available in cases involving "egregious misconduct, such as bribery of a judge or members of a jury" and only to prevent "a grave miscarriage of justice."  Further, it requires "clear and convincing evidence" of fraud.  The court held that Defendant had not even alleged conduct sufficient to meet the

governing standard, much less proven it by clear and convincing evidence. Accordingly, the court denied Defendant's Rule 60(d)(3) motion on the merits.

Defendant appealed. In his appellate brief, Defendant for the most part rehashes the arguments he has made in prior filings, including his direct appeal, his § 2255 proceeding, and other post-conviction motions. For example, Defendant argues that his convictions should be vacated because the Government obtained the convictions via fabricated evidence and false testimony, particularly Lucienne's testimony concerning her discussions with Defendant about his agreement to pay $100,000 for her husband's silence and to recover a "fake" recording of Defendant's conversations with Rodriguez. As additional grounds for vacating his convictions, Defendant relies on other previously asserted arguments, including that: (1) his counsel failed to contest the interstate commerce element of his offense, (2) FBI agent Andresen made false statements in an affidavit supporting the charges against Defendant, and (3) the prosecutor misstated Lucienne's testimony and falsely represented that Defendant had stipulated to the interstate commerce element in closing arguments.

For the reasons discussed below, we conclude that the district court lacked jurisdiction to grant the relief Defendant requested in his motion, whether we construe it as arising under Rule 60(d)(3) of the Federal Rules of Civil Procedure or as a second or successive § 2255 motion for habeas relief. Accordingly, we vacate the court's order denying Defendant's Rule 60(d)(3) motion and

remand the case so the motion can be dismissed for lack of jurisdiction.

## DISCUSSION

Defendant's motion seeks relief from his criminal convictions pursuant to Rule 60 of the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 60 provides for relief from a final civil judgment or order under certain circumstances. *See* Fed. R. Civ. P. 60. For example, Rule 60(b) states that a party may be relieved from a final judgment or order based on mistake or excusable neglect, newly discovered evidence that could not have been discovered earlier, or fraud or misconduct by an opposing party, among other reasons. Fed. R. Civ. P. 60(b).

The provision Defendant seeks to invoke in his motion, Rule 60(d)(3), allows a court to set aside a judgment for "fraud on the court." Fed. R. Civ. P. 60(d)(3). The district court decided Defendant's Rule 60(d)(3) motion on the merits, denying the motion after concluding that Defendant had not alleged and could not satisfy the demanding standard for establishing fraud on the court sufficient to warrant vacating a judgment under that rule. *See Booker v. Dugger*, 825 F.2d 281, 283 (11th Cir. 1987) ("Where relief from a judgment is sought for fraud on the court, the fraud must be established by clear and convincing evidence."); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1338 (5th Cir. 1978) ("[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the

fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court.").[3]

We do not reach the merits of Defendant's Rule 60(d)(3) motion on appeal, because we conclude that the district court lacked jurisdiction to rule on the motion. "Because we are a court of limited jurisdiction, adjudicating an appeal without jurisdiction would offend fundamental principles of separation of powers." *In re Esteva*, 60 F.4th 664, 671 (11th Cir. 2023) (alterations adopted and quotation marks omitted). As such, "we are obligated to inquire into subject matter jurisdiction . . . whenever it may be lacking." *Id.* at 670 (quotation marks omitted). Subject matter jurisdiction is an issue we review *de novo*. *Id.*

In his motion, Defendant asks the district court to vacate his convictions. Federal courts do not have jurisdiction to modify a criminal conviction except as "expressly authorized by statute" or applicable federal rule. *United States v. McCoy*, 88 F.4th 908, 912 (11th Cir. 2023) (citing 18 U.S.C. § 3582(c)). *See also United States v. Phillips*, 597 F.3d 1190, 1196–97 (11th Cir. 2010) (noting that a district court has "no inherent authority" to modify a criminal sentence (quotation marks omitted)). Defendant relies on Federal Rule of Civil Procedure 60(d)(3) as the purported authority for vacating his convictions, but that rule does not apply in criminal cases. *See United States v. Fair*, 326 F.3d 1317, 1318 (11th Cir. 2003).

---

[3] This Court has adopted as binding precedent the decisions of the former Fifth Circuit Court of Appeals rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Rule 1 of the Federal Rules of Civil Procedure, which defines the scope and purpose of those rules, clearly states that the rules "govern the procedure in all *civil* actions and proceedings in the United States district courts." Fed. R. Civ. P. 1 (emphasis added). *See also United States v. Mosavi*, 138 F.3d 1365, 1366 (11th Cir. 1998) (noting that the Federal Rules of Civil Procedure "unambiguously" limit their application to "suits of a civil nature" (quotation marks omitted)). As such, this Court has explained that "Rule 60(b) simply does not provide for relief from judgment in a criminal case." *Fair*, 326 F.3d at 1318 (quotation marks omitted). Neither does Rule 60(d)(3), and for the same reason.[4]

The statutory basis for the relief Defendant seeks in his motion is in fact found in 28 U.S.C. § 2255. *See* 28 U.S.C. § 2255(a) (setting out the procedure to collaterally attack a federal sentence). We are empowered to liberally construe Defendant's *pro se* Rule 60(d)(3) motion, and determine whether it is cognizable under § 2255. *See United States v. Holt*, 417 F.3d 1172, 1175 (11th Cir. 2005). However, even if we construe Defendant's Rule 60(d)(3) motion as

---

[4] Defendant may have been confused, when he filed the instant motion under Federal Rule of Civil Procedure 60(d)(3), by the procedures applicable in a criminal case as opposed to the procedures applicable in a § 2255 habeas case. The Federal Rules of Civil Procedure "may be applied, when appropriate" in § 2255 cases "to the extent they are not inconsistent" with the Antiterrorism and Effective Death Penalty Act ("AEDPA") and other rules specific to § 2255 proceedings. *Gonzalez v. Sec'y for the Dep't of Corr.*, 366 F.3d 1253, 1269–70 (11th Cir. 2004) (quotation marks omitted). Criminal cases, on the other hand, are governed by the Federal Rules of Criminal Procedure.

a § 2255 motion, we still conclude that the district court was without jurisdiction to rule on the motion.

As discussed, Defendant has already filed a § 2255 motion, which was denied on the merits. There are "strict limits" on filing a second § 2255 motion, and those limits operate as a jurisdictional bar. *See Jones v. United States*, 82 F.4th 1039, 1043 (11th Cir. 2023) (citing 28 U.S.C. § 2255(h)(2)). Specifically, a defendant seeking to file a second or successive § 2255 motion must apply to the appropriate court of appeals for an order authorizing such a motion and certifying that it is based on one of the grounds specified in § 2255(h). *See* 28 U.S.C. § 2255(h). Failure to obtain the required authorization deprives the district court of jurisdiction to consider the motion. *See Jones*, 82 F.4th at 1048. Defendant failed to obtain the required authorization here. Thus, even if Defendant had correctly styled his motion as arising under § 2255, the district court lacked jurisdiction to consider it.

In short, the district court did not have jurisdiction over the claim asserted by Defendant in his Rule 60(d)(3) motion, and thus did not have the power to deny the claim on the merits. *See United States v. Pearson*, 940 F.3d 1210, 1216 (11th Cir. 2019). Accordingly, we do not decide whether the district court's ruling on the merits was correct, but rather vacate the ruling and remand the case so the district court can dismiss the motion for lack of jurisdiction.

### CONCLUSION

For the foregoing reasons, we **VACATE** the district court's order denying Defendant's Rule 60(d)(3) motion and we **REMAND** the case so the motion can be dismissed for lack of jurisdiction.